DOUGLAS W. FARRINGTON,

     Plaintiff,

vs.                                CASE NO. 3:09-cv-94-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

     Defendant.

_____

## ORDER AND OPINION

This matter is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for supplemental security income benefits ("SSI"). Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #14). Defendant filed his brief in support of the decision to deny disability benefits (Doc. #16). Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of reference dated April 11, 2008 (Doc. #9). The Commissioner has filed the transcript of the proceedings (hereafter referred to as "Tr." followed by the appropriate page number).

The undersigned has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings. Upon review of the record, the undersigned found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the undersigned in making his determinations. Accordingly,

the matter has been decided on the written record. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED**.

## I. Procedural History

In the instant action, Plaintiff filed a claim for Supplemental Security Income benefits on October 7, 1999, alleging disability as of July 31, 1992 (Tr. 48-50). His claim was denied through two administrative review stages (Tr. 33-38) and on July 26, 2001 a hearing was held before Administrative Law Judge John D. Thompson, Jr. (Tr. 249-305). At that time Plaintiff was represented by Lori Gaglione, Esq. The ALJ found Plaintiff was not disabled by decision dated April 24, 2002 (Tr. 14-29). This decision was appealed to this Court (*Farrington v. Barnhart*, 3:04-cv-367-J-HTS), and by order dated November 30, 2005 the Honorable Howard T. Snyder reversed the ALJ's decision and remanded the claim for additional administrative proceedings (Tr. 328-36).

A second administrative hearing was held by ALJ Thompson on August 25, 2008. Again, Plaintiff was represented by Ms. Gaglione (Tr. 570-670).[1] Testifying at this hearing were Plaintiff, Drs. Edward Griffin and Olin Hamrick, and a Vocational Expert, Charles Heartsill (Tr. 570-670). By decision dated September 25, 2008 (Tr. 309-23) the ALJ again denied Plaintiff's claim for benefits. The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner (Tr. 306-08). Plaintiff, now represented by Erik W. Berger, Esq., appeals.

---

[1] A prior second administrative hearing was held on June 24, 2008; however, it was continued (Tr. 567-69).

2

## II. Standard of Review

A plaintiff is entitled to disability benefits under the Social Security Act if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 416.920(a)(4)(i-v);[2] *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

---

[2] Unless otherwise specified, all references to 20 C.F.R. will be to the 2009 edition.

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, Plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence

4

thereof as the Commissioner of Social Security may require"). It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove disabling physical or mental functional limitations. 20 C.F.R. § 416.912(c).

### III. Discussion

Plaintiff is a 48 year old man with a 7th grade education (Tr. 48, 172). While attending the 8th grade, Plaintiff was apparently forced to leave school by his "step-father,"[3] and compelled to work on a commercial fishing boat (Tr. 172, 262). Plaintiff worked as a commercial fisherman from 1974 to 1988; thus, he would have been approximately 22 years old when he stopped working as a commercial fisherman (*see* Tr. 59).[4]

The ALJ found Plaintiff has past relevant work experience as a lawn service worker and driver (Tr. 322, 653). These jobs were identified by the VE as being semi-skilled occupations (Tr. 655). The ALJ additionally found that Plaintiff had the following severe impairments: "borderline level of intellectual functioning vs. mild mental retardation" (Tr. 314).

---

[3]The record reflects that Plaintiff was left on a neighbor's door step as small child (*see* Tr. 102, 172). These neighbors apparently raised Plaintiff; however, there is no indication that they were related to Plaintiff by marriage (*see* Tr. 102, 172).

[4]As this work was performed more than 15 years prior to the ALJ's decision, the ALJ did not consider it "past relevant work experience," as defined by 20 C.F.R. § 416.960(b). It should be noted, however, that the occupation of commercial fisherman is a semi-skilled occupation (Tr. 275). Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. 20 C.F.R. § 416.968(b). Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. 20 C.F.R. § 416.968(b). A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks. 20 C.F.R. § 416.968(b). In his disability report, Plaintiff noted that as part of his job as a commercial fisherman he used machines, tools, equipment, technical knowledge, and skill (Tr. 59).

Plaintiff raises three issues on appeal. First, Plaintiff argues the ALJ erred at the second step of the sequential evaluation process by not finding his hearing impairment to be a severe impairment (Doc. #14 at 15-17). Next, Plaintiff argues that the ALJ's determination that Plaintiff does not meet or medically equal Listing 12.05(C), mental retardation, pursuant to 20 C.F.R. 404 Appx. 1 Sub. P (the "Listings"), is not supported by substantial evidence (Doc. #14 at 13-14, 17-22). Lastly, Plaintiff argues that the ALJ committed reversible error by not explicitly stating the weight he afforded a testifying medical expert's opinion that Plaintiff has a marked impairment in concentration, persistence or pace, based on his low I.Q. scores (Doc. #14 at 23-25).

The undersigned will address each issue in turn.

## A. Whether the ALJ Erred as a Matter of Law by not Finding Plaintiff's Hearing Impairment to be a Severe Impairment at Step 2 of the Sequential Evaluation Process

As an initial matter, the undersigned would note that Plaintiff has demonstrated that he suffers from hearing loss (*see* Tr. 106, 124-26, 131, 182-83, 215-16, 237). Plaintiff, however, ignores established jurisprudence that a diagnosis alone is an insufficient basis for finding that an impairment is severe. *See Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002); *see also McCray v. Massanari*, 175 F.Supp.2d 1329, 1334 (M.D. Ala. 2001) (where the district court found the claimant must provide more than evidence of a listed diagnosis to prove disability under one of the listed impairments). The severity of a medically ascertained impairment must be measured in terms of its effect upon a claimant's ability to work and not simply in terms of deviation from medical standards of bodily normality. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986); *Moore v.*

6

*Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (finding the mere existence of impairments "does not reveal the extent to which they limit [a claimant's] ability to work or undermine the ALJ's determination in that regard").

An ALJ is charged with determining the severity of a claimant's impairments. As noted above, it is the effect an impairment has on one's ability to work that determines disability within the meaning of the Social Security Act. Therefore, an ALJ must consider a claimant's limitations to the ability to work when assessing the severity of an impairment. *See* 20 C.F.R. §§ 416.920(c), 416.921 (limitations from an impairment determine whether it is severe).

Moreover, a continued analysis in the sequential step evaluation process can infer failure to articulate a finding at an earlier step was harmless error. *Hutchison v. Bowen*, 787 F.2d 1461 (11th Cir. 1986). Articulation of the specific impairments included in the Step 2 finding, while preferable, however, is not essential for an adequate finding under the Regulations. As the Eleventh Circuit has stated, "the ALJ could not have committed any error at step two because he found that [the claimant] had a severe impairment or combination of impairments and moved on to the next step in the evaluation, which is all that is required at step two." *Council v. Barnhart,* 127 Fed. Appx. 473 (Table), No. 04-13128, at 4 (11th Cir. Dec. 28, 2004) (copy attached)*; see also Jamison v. Bowen,* 814 F.2d 585, 588 (11th Cir. 1987) (stating that the finding of any severe impairment is enough to satisfy the requirement of step two).

In determining whether an individual's physical or mental impairments are of sufficient severity to establish disability under the Regulations, the ALJ is required to

consider all of the individual's impairments regardless of whether each impairment on its own is found to be severe. 20 C.F.R. § 416.923. The Eleventh Circuit has held that where "a claimant has alleged a multitude of impairments, a claim for social security benefits based on disability may lie even though none of the impairments, considered individually, is disabling." *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

An ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having severe hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Statements of the ALJ may make clear that he has considered the impairments in combination. *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986); *accord, Jones v. Dept. of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (finding that a claimant does not have "an impairment or combination of impairments listed in, or medically equal to one [in the Listings]" indicates proper consideration of impairments in combination).

In the instant case, the ALJ found in Plaintiff's favor at step 2 (*see* Tr. 314). The record reveals that, even though he did not find Plaintiff's hearing impairment to be a "severe" impairment, the ALJ nonetheless considered Plaintiff's hearing impairment in combination with his mental impairment when he determined Plaintiff's residual functional capacity ("RFC"). Specifically, the ALJ found that, due to his hearing problem, Plaintiff would need to wear ear protection in loud/noisy environments (Tr. 320-21). In addition, as will be discussed more fully below, the undersigned finds the ALJ relied on substantial evidence of record in finding Plaintiff's hearing impairment does not significantly limit his ability to perform work activity.

To illustrate, in finding Plaintiff's hearing impairment does not significantly limit his ability to work, the ALJ relied on the testimony of medical expert, Edward Griffin, M.D., a board certified internist (*see* Tr. 315, 576-93, 654-63). Dr. Griffin testified that, although Plaintiff suffers from both sensorineural and conductive hearing loss,[5] Plaintiff's audiological testing discrimination scores of 96 and 92 percent indicate Plaintiff can hear normal voices (Tr. 182, 579, 582). Dr Griffin stated that, although the record shows audiological testing discrimination scores as low as 84% and 76%, with these scores Plaintiff "should [nevertheless] be able to hear any normal voice at normal levels" (Tr. 215, 579, 582). Dr. Griffin additionally testified that, "the only limitation I would have on him would be his exposure to noise. He should not be working in a noisy environment. If he were, he needs to be wearing ear protection" (Tr. 579-80).

Although the undersigned recognizes the ALJ specifically found Plaintiff's "impacted ear wax" not to be a severe impairment and did not specifically mention Plaintiff's additional sensorineural impairment in the body of his decision, the undersigned finds this omission does not amount to reversible error because, at the hearing, the ALJ noted both Plaintiff's ear wax and sensorineural hearing problems, and reiterated Dr. Griffin's testimony regarding the same, *supra,* while discussing the matter with Plaintiff's attorney (Tr. 645). As noted above, the only restriction Dr. Griffin placed on Plaintiff was to wear ear protection in noisy environments (*see* Tr. 579-80). The ALJ relied on this testimony and included

---

[5]Sensorineural hearing loss occurs from damage to the inner ear, the nerve that runs from the ear to the brain (auditory nerve), or the brain itself. MedlinePlus,U.S. National Library of Medicine, http://www.nlm.nih.gov/medlineplus/ency/article/003291.htm (last visited Mar. 29, 2010). Dr. Griffin testified that Plaintiff's conductive hearing loss is the result of ear obstruction caused by excessive ear cerumen (ear wax) (Tr. 579, 583). In addition, Dr. Griffin noted that, at one point, Plaintiff had a foreign body (an ear drainage wick, or tube) lodged in his middle ear canal, which had to be surgically removed (Tr. 578; *see also* Tr. 124-26).

such a limitation in both his RFC finding and in the hypothetical question he posed to the VE. (Tr. 654-55).

When a medical professional functions as an expert witness in the course of an evidentiary hearing before an administrative law judge, Social Security Ruling 96-6p designates such professional as a medical expert, and an ALJ may rely upon testimony of a medical expert when evaluating the nature and extent of a claimant's impairments if it is consistent with the record evidence. SSR. 96-6p, 1996 WL 374180, at *4 n. 2 (1996); *see Richardson*, 402 U.S. at 408.

Here, Dr. Griffin's findings are consistent with the report of Beena Parikh, Ph.D., who evaluated Plaintiff in 1999 and indicated that Plaintiff reported a prior ear surgery, but did not otherwise indicate that he had any trouble hearing during the examination (Tr. 172-74). In addition, Peter Knox, Psy.D. performed a consultative psychological evaluation on September 11, 2007, subsequent to the Court's remand (Tr. 401-12). Dr. Knox reported Plaintiff could hear normal conversational speech, and that he had a good ability to understand speech, produce speech, and be heard and understood (Tr. 405).

The undersigned is cognizant of the fact that on April 28, 2008, Plaintiff underwent a psychological evaluation by Philip R. Yates, Ph.D ("Dr. Yates") (Tr. 540-59). Dr. Yates noted that Plaintiff had significant problems hearing during the examination and became upset and frustrated, saying that all he could hear was a muffled mumble (Tr. 541). Dr. Yates felt that Plaintiff's distress appeared genuine and his difficulties seemed realistically based (Tr. 541). I.Q. testing revealed a Performance score of 69, but no Verbal scores were obtained because of Plaintiff's hearing difficulties (Tr. 542-43). Plaintiff, however, testified that some days it is harder for him to hear than other days (Tr. 642), and the

10

objective hearing tests, *supra*, per the testimony of Dr. Griffin, demonstrate that Plaintiff is capable of hearing normal voices at normal levels (Tr. 579, 581-83). In making his determination in this regard, the ALJ relied on this evidence, along with Dr. Griffin's assessment that the only limitation he would place on Plaintiff is the avoidance of noisy environments and the necessity of wearing ear protection in such environments (Tr. 315, 578-89, 654-55).

The undersigned finds the aforementioned evidence is sufficient to permit a reasonable mind to conclude that Plaintiff is not disabled by his ear condition. *See Bloodsworth*, 703 F.2d at 1239. The reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Id.* For the reasons stated herein, the undersigned finds the ALJ did not err as a matter of law by not finding Plaintiff's hearing impairment to be a severe impairment at Step 2 of the sequential evaluation process—particularly since he found in Plaintiff's favor at Step 2, continued the sequential step analysis, and considered all of Plaintiff's impairments in combination.

**B.   Whether the ALJ Erred by not Finding Plaintiff Meets or Medically Equals Listing 12.05(C), Mental Retardation, Pursuant to 20 C.F.R. 404 Appx. 1 Sub. P (the "Listings")**

In essence, Plaintiff argues that his I.Q. scores and school records demonstrate that he has satisfied the requirements promulgated under Listing 12.05(C), mental retardation (Doc. #14 at 13-26). The undersigned, however, is not persuaded by his arguments.

> To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. To equal a Listing, the medical findings must be at least equal in severity and duration

11

to the listed findings.

*Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (*quotations and citations omitted*); *see also Wilkinson o/b/o Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987); 20 C.F.R. §§ 416.925, 416.926. The evidentiary standards for presumptive disability under the listings are more stringent than for cases that proceed to other steps in the sequential evaluation process because the Listings represent an automatic screening in based on medical findings rather than an individual judgment based on all relevant factors in a claimant's claim. *See* 20 C.F.R. §§ 416.920, 416.926, 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *Wilkinson*, 847 F.2d at 662.

Pursuant to Listing 12.05, mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the development period (*i.e.* before age 22). Listing 12.05, subparagraph C, requires a valid, verbal, performance, or full scale I.Q. score of 60 through 70 and that the individual have an additional physical or mental impairment that imposes a significant work-related impairment. 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.05(C).

Mental retardation denotes a lifelong condition characterized by below-average intellectual endowment as measured by well-standardized I.Q. tests. 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.00(D)(5)(a). The degree of impairment should be determined primarily on the basis of intelligence testing and its accompanying medical report; however, care should be taken to ascertain that test results are consistent with daily activities and behavior. 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.00(D)(5)(c).

The record reflects that Plaintiff has undergone I.Q. testing on four occasions. On December 13, 1999, Plaintiff underwent a psychological evaluation by Beena M. Parikh, M.S., Ph.D (Tr. 172-75). Dr. Parikh administered the Wechsler Adult intelligence Scale-Revised test, which showed a Full Scale score of 70, a Performance score of 70 and Verbal score of 72; all of which fall within the borderline range of intellectual functioning (Tr. 174). Dr. Parikh noted that Plaintiff suffered from mild impairment in his pace, given his borderline intellectual functioning; however, she stated Plaintiff could likely "perform effectively in many employment positions with adequate job training" (Tr. 174-75).

On November 1, 2001, Plaintiff was seen by George N. Maida, M.D. for a mental health consultative evaluation (Tr. 239-44). I.Q. testing revealed the following: Full Scale score of 71, Verbal score of 73, and Performance score of 71 (Tr. 241-42). Dr. Maida pointed out that statistically there were no significant differences between his Verbal and Performance scores or with the scores obtained in his 1999 testing, *supra* (Tr. 242). Dr. Maida noted that Plaintiff's reading, spelling, and arithmetic were at the 1st grade level (Tr. 242). Plaintiff's tests scores were deemed valid and Dr. Maida found Plaintiff was not malingering (Tr. 243). Dr. Maida stated that Plaintiff's mental limitations and functional illiteracy "make the prognosis for learning new job skills poor and limit him to the most concrete, repetitive jobs in the market . . . " (Tr. 243).

On September 11, 2007, Plaintiff underwent a consultative psychological examination by Peter Knox. M.Ed., Psy.D. (Tr. 401-09). Plaintiff was administered the Wechsler Adult Intelligence Scale-Third Addition (WAIS-III) and received the following valid scores: Full Scale I.Q. of 72, Verbal I.Q. of 79, and Performance I.Q. of 68 (Tr. 405). According to Dr. Knox, Plaintiff may experience difficulty in keeping up with his peers in a

13

wide variety of situations that require age appropriate thinking and reasoning abilities (Tr. 406). Dr. Knox completed a Medical Source Statement of Ability to do Work-Related Activities Mental based on his evaluation of Plaintiff (Tr. 410-12). Dr. Knox stated that Plaintiff had mild limitation in his ability to understand, remember, and carry out simple instructions and make judgments on simple work-related decisions (Tr. 410). He found Plaintiff had moderate limitation in his ability to make judgments on simple work-related decisions and in responding appropriately to usual work situations and changes in a routine work setting (Tr. 411).

On April 28, 2008, Plaintiff underwent a psychological evaluation by Philip R. Yates, Ph.D, which also included the WAIS-III (Tr. 540-59). I.Q. testing revealed a Performance score of 69, but no Verbal scores were obtained because of Plaintiff's hearing difficulties, *supra* at 10 (Tr. 542-43).

Listing 12.00 provides that the Wechsler Adult Intelligence Scale series is a well standardized comprehensive intelligence test appropriate for I.Q. determinations. 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.00(D)(6)(c). Said provision states that, where more than one I.Q. level is derived from the testing, *e.g.*, verbal, performance and full scale I.Q. scores, the lowest of these should be used in conjunction with 12.05, mental retardation. 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.00(D)(6)(c). Additionally, the Eleventh Circuit has held that when a plaintiff presents a valid I.Q. score in the range prescribed by Listing 12.05, then that plaintiff creates a rebuttable presumption that the impairment is lifelong and existed during the developmental period. *Hodges v. Barnhart*, 276 F.3d 1265, 1269 (11th Cir. 2001). Under *Hodges*, however, it should be noted that the

14

Commissioner can present activities in the daily life of a plaintiff to rebut the presumption of a lifelong impairment. *Id.* Moreover, the *Hodges* court added the caveat that its holding adopting a presumption of mental impairment before age 22 does not, however, shift the burden of proof from a claimant to prove entitlement to social security benefits. *Id.*

Pursuant to this Court's prior remand order, the Commissioner was directed to reconsider whether Plaintiff meets the requirements of Listing 12.05(C) in light of Plaintiff's school records, which "at least arguably demonstrate an initial manifestation of deficits within the developmental period, particularly in view of the applicable [I.Q. score] presumption," *supra* (Tr. 333). The Court remanded this case because, in his 2002 decision, the ALJ stated there was "no evidence to suggest that [Plaintiff] was suffering from significant intellectual difficulties prior to his 22nd b[i]rthday" (Tr. 24; *see also* Tr. 333). The Court found this statement was not supported by sufficient rationale, especially in light of the various pieces of evidence that were not discussed by the ALJ (Tr. 333-34). Specifically, the various pieces of evidence referenced by the Court were as follows: (1) a 4th grade teacher's note stating that Plaintiff was a "slow learner [who] tries very hard to do the work that is assigned"; (2) multiple "D" and failing grades on Plaintiff's 7th grade report card; and (3) extremely low 8th grade standardized test scores (Tr. 333-34).

On remand, the Commissioner further developed the record by obtaining additional psychological testing and holding a second administrative hearing. In his 2008 decision, the ALJ revisited Plaintiff's school records and reiterated his position that such records fail to show deficits in adaptive functioning prior to age 22 (Tr. 317-19). As will be discussed more fully below, the undersigned finds the ALJ's rationale and determination in this regard

15

is supported by substantial evidence of record. Moreover, the ALJ referenced additional evidence, *infra*, that supports his finding that Plaintiff did not suffer deficits in adaptive functioning prior to the attainment of age 22.[6]

To illustrate, with respect to Plaintiff's school records, the ALJ noted that, although Plaintiff's 4th grade teacher said Plaintiff was a "slow learner," Plaintiff's other teacher reports indicate that Plaintiff lacked motivation (Tr. 318). The ALJ referenced Plaintiff's 2nd grade teacher's report that Plaintiff was "an average student" and that he could "do better work if he did not waste so much time talking" (Tr. 318; *see also* Tr. 102). The ALJ additionally noted a report from Plaintiff's 3rd grade teacher, who stated Plaintiff "had a poor attitude" and "required much help in learning to accept responsibility for his own acts" (Tr. 318; *see also* Tr. 102). The ALJ then referenced the reports from Plaintiff's 5th and 6th grade teachers, who commented that Plaintiff was a "poor pupil" who accepted little responsibility for his work (Tr. 318; *see also* Tr. 102).

The ALJ also carefully examined the Duval County Junior High school records (Tr. 318), which revealed that during the 7th grade Plaintiff achieved C's (defined by the school as "satisfactory") in English, Social Studies, Health, and General Science (Tr. 318; *see also* Tr. 103). The ALJ recognized that, although Plaintiff received D's in Math, Art, and Music, the school record indicates that D's represent an "acceptable" level of performance (Tr.

---

[6]Plaintiff additionally argues that the ALJ's erred by not finding his hearing impairment does not constitute an additional impairment that imposes a significant work-related limitation (Doc. #14 at 15-17). With respect to Listing 12.05(C), the issue is moot because the undersigned has found substantial evidence supports the ALJ's determination that Plaintiff failed to establish that he suffered from deficits in adaptive functioning prior to age 22. Specifically, with regard to meeting Listing 12.05(C), whether a claimant suffered deficits in adaptive functioning prior to the attainment of age 22 is a threshold element, which must be satisfied prior to any consideration of whether a claimant has an additional physical or mental impairment that imposes a significant work-related limitation. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.05(C). As this threshold element was not satisfied in this instance, the issue is moot.

16

318; *see also* Tr. 103). The ALJ additionally noted that Plaintiff was promoted to the 8th grade and that, throughout the 7th grade, Plaintiff missed only 10 out of 180 school days (Tr. 318; *see also* Tr. 103). The ALJ stated that there was no evidence he failed any 7th grade classes, was unable to read or write, was enrolled in Special Education, or received any Resource Room assistance in any area (Tr. 318; *see also* Tr. 98-103).

The ALJ next evaluated Plaintiff's 8th grade academic performance (during the 1975-76 school year) and acknowledged that he failed many courses (Tr. 318); however, the ALJ noted that Plaintiff was absent 45 out of 180 days (or 25% of the school year) (Tr. 318; *see also* Tr. 103). On a second attempt at 8th grade (the 1976-77 school year), Plaintiff received a B in mathematics during his first quarter, which the school record defined as "very good" performance (Tr. 103). The ALJ noted, however, Plaintiff was enrolled in school for only 92 days, of which he missed 32 days and ultimately failed all of his classes (Tr. 318; *see also* Tr. 103). This evidence is consistent with the opinion of Dr. Knox that Plaintiff suffered from "educational impoverishment" rather than mental retardation (Tr. 408), and the fact that Plaintiff's "step-father" forced him to leave school in order to work on a commercial fishing boat.[7]

With respect to Plaintiff's low 8th grade standardized test scores, the ALJ recognizing they established Plaintiff was in a very low percentile, but he did not to attach much weight to the scores in light of the evidence that "multiple teachers questioned his overall effort and motivation, which is only one of the many variables affecting the outcome

---

[7]It should be noted that Plaintiff testified he would spend up to 14 days at a time out at sea fishing on his "step-father's" fishing boat and that the Duval County school records state that Plaintiff was transferred to the Bahamas in 1977 (Tr. 100, 280).

of standardized scores" (Tr. 319; *see also* Tr. 102, 104).

As additional support for finding Plaintiff has not demonstrated that he suffered deficits in adaptive functioning prior to the attainment of age 22, the ALJ referenced Plaintiff's ability to sustain employment at the semi-skilled work level and his activities of daily living (Tr. 317, 319). An ALJ may consider a plaintiff's work history as a factor to discount his or her allegation of mental retardation. *Outlaw v. Barnhart*, 197 Fed. Appx. 825, 827 (11th Cir. 2006).[8]

As noted previously, semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. 20 C.F.R. § 416.968(b). Plaintiff worked from age 12 until age 22 as an offshore fisherman (Tr. 317; *see also* Tr. 59). He stated that as part of this job he used machines, tools, and equipment, as well as technical knowledge and skills (Tr. 317; *see also* Tr. 59). This work supports the ALJ's determination that Plaintiff did not have the requisite deficits in adaptive functioning prior to age 22. In addition, the ALJ considered Plaintiff's work as a landscaper and driver (Tr. 317; *see also* Tr. 59). The VE testified that this work is also semi-skilled (Tr. 655).

Finally, the ALJ determined Plaintiff's activities of daily living were not consistent with him meeting the mental retardation Listing. Specifically, the ALJ noted that Plaintiff has ordinary activities of daily living such as obtaining a driver's license (and driving when

---

[8]Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

necessary), watching television, listening to the radio, making the occasional sandwich, assisting neighbors with lawn maintenance, and visiting with his girlfriend (Tr. 319; *see also* Tr. 263, 266, 405, 638-41).

In summary, the ALJ was not required to find Plaintiff was mentally retarded based solely on the results of his I.Q. test. *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986). An ALJ is required to examine the results of an I.Q. test in conjunction with other medical evidence and the claimant's daily activities and behavior. *Id.* Based on the foregoing, the undersigned finds there is substantial evidence in the record to support the ALJ's finding that Plaintiff failed to establish that he either meets or medically equals Listing 12.05(C).

## C.     Whether the ALJ Committed Reversible Error by not Explicitly Stating the Weight he Afforded to the Opinion of a Testifying Medical Expert

Plaintiff's final argument is that the ALJ committed reversible error by not stating the weight he afforded to testifying medical expert, Dr. Hamrick's, opinion that Plaintiff's low I.Q. scores cause him to have a marked impairment in concentration, persistence or pace (Doc. #14 at 23). The undersigned is not persuaded.

In this case, the Court finds the ALJ's failure to explicitly state the weight he afforded to Dr. Hamrick's opinion to be harmless error. Various courts, including this one, have addressed harmless error with their findings. In *Diorio v. Heckler*, 721 F.2d 726 (11th Cir. 1983), the court found harmless error when the ALJ made erroneous statements of fact, but applied the proper legal standard when considering the vocational factors in application of the GRIDS. *Id.* at 728. In *Wright v. Barnhart*, 153 Fed. Appx. 678 (11th Cir. 2005), the court noted though although the ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and normally failure to do so is reversible

error, such failure was harmless error when correct application of the Regulations would not contradict the ALJ's ultimate findings. *Id.* at 684. This Court found harmless error when the ALJ failed to discuss a treating physician's opinion, but even giving controlling weight to the opinion would not have changed the outcome. *Parton v. Astrue*, No. 3:07-cv-63-J-TEM, 2008 WL 897094 (M.D. Fla. Mar. 31, 2008).

In *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989), the court found no principle of administrative law or common sense requires remand in quest of a perfect opinion unless there is reason to believe the remand might lead to a different result. In *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000), the court held that while an error of law by the ALJ may necessitate a remand, a remand is not essential if it will amount to no more than an empty exercise.

Here, remand for the cited misstatements would not change the outcome of the case and, thus, would be an empty exercise.

To illustrate, the undersigned finds the ALJ implicitly discounted Dr. Hamrick's opinion in this regard when he made the explicit finding that Plaintiff only suffers from "moderate" limitations in concentration, persistence or pace (*see* Tr. 320). In support of this finding, the ALJ noted that during both hearings Plaintiff demonstrated no observable difficulty comprehending questions or providing answers (Tr. 320). In addition, the ALJ noted that Plaintiff participated in four I.Q. tests, and that none of the examiners reported that Plaintiff suffered from limitations in concentration, persistence or pace while taking the examinations (Tr. 320; *see also* Tr. 172-75, 239-44, 401-09, 540-43).

20

The undersigned would also point out that other record evidence supports the ALJ's finding in this regard. Specifically, in 1999, Dr. Knox found Plaintiff had a GAF score of 75, that his attention and concentration were "mildly impaired," and that he could "likely perform effectively in many employment positions" (Tr. 174).[9] Also in 1999, Dr. Parikh noted that Plaintiff suffered from mild impairment in his pace, given his borderline intellectual functioning, but that he could likely "perform effectively in many employment positions with adequate job training" (Tr. 174-75). Further, a mental RFC assessment completed in 2000 by Alejandro Vergara, M.D. ("Dr. Vergara") indicates Plaintiff was only mild to moderately limited in sustained concentration and persistence (Tr. 225-26). In addition, Dr. Vergara stated that Plaintiff should nevertheless be able to perform "simple, repetitive tasks." (Tr. 227).

In 2007, Dr. Knox again evaluated Plaintiff and found his memory was good and that he had "no significant issues" in his concentration and persistence (Tr. 405). Dr. Knox assessed Plaintiff a GAF score of 60, which represents only "moderate difficulty" in functioning (Tr. 405). Moreover, although Dr. Yates, in 2008, reported that he believed Plaintiff meets the requirements of Listing 1205(C), he found Plaintiff only suffered from "moderate" functional limitations in the B and D criteria (which includes the area of

---

[9]The Global Assessment of Functioning Scale ("GAF") was designed by mental health clinicians to rate the psychological, social and occupational functioning of an individual on a mental health scale of 0-100. A GAF score of 41-50 describes "serious symptoms" and includes "serious impairment in the social, occupational or school functioning." A GAF score of 51-60 describes "moderate symptoms" and includes only moderate difficulty in functioning. A GAF score of 61-70 indicates "some mild symptoms," but generally functioning "pretty well, [and] has some meaningful interpersonal relationships." A GAF score of 71-80 indicates that if symptoms are present, they are transient and expectable reactions to psycho-social stressors with no more than slight impairment in social, occupational or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, DSM-IV, 32-34 (4th ed., American Psychiatric Assoc. 2000).

concentration, persistence or pace) (Tr. 554, 557-58).[10]

Based on the foregoing, the undersigned finds the ALJ implicitly discounted Dr. Hamrick's opinion, *supra*, and that this determination is supported by substantial evidence.

## IV. Conclusion

Upon due consideration, the Court finds the decision of the Commissioner was decided according to proper legal standards and is supported by substantial evidence. As neither reversal nor remand is warranted in this case, and for the aforementioned reasons, the decision of the ALJ is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file. Each party shall bear its own fees and costs.

**DONE AND ORDERED** at Jacksonville, Florida this **29** day of March, 2010.

*Thomas E. Morris*
THOMAS E. MORRIS
United States Magistrate Judge

Copies to all counsel of record

---

[10]The undersigned would note that Dr. Yates' finding that Plaintiff meets Listing 12.05(C) and that he is only moderately limited in the B and D criteria is incongruent.

22

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

DEC 28 2004

THOMAS K. KAHN
CLERK

No. 04-13128
Non-Argument Calendar

D.C. Docket No. 03-00151-CV-OC-10-GRJ

DA G. COUNCIL,

Plaintiff-Appellant,

versus

MISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

Appeal from the United States District Court for the
Middle District of Florida

(DECEMBER 28, 2004)

BLACK, HULL and WILSON, Circuit Judges.

CURIAM:

Linda G. Council appeals the magistrate judge's order affirming the

ımissioner of Social Security's denial of her application for disability benefits,

J.S.C. § 405(g). We affirm the Commissioner's denial of benefits.

## I. DISCUSSION

We review a Social Security case to determine whether the Commissioner's

sion denying Council's application for benefits is supported by substantial

ence and based on proper legal standards. *Wilson v. Barnhart*, 284 F.3d 1219,

(11th Cir. 2002). "Substantial evidence is 'such relevant evidence as a

nable mind might accept as adequate to support a conclusion.'" *Falge v.*

', 150 F.3d 1320, 1322 (11th Cir. 1998) (citation omitted). In reviewing the

missioner's decision, we do not reweigh the evidence or substitute our

nent for that of the Commissioner, but instead review the entire record.

*elius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1997).

The Social Security regulations set forth a five-step "sequential evaluation"

ss to determine whether a claimant is disabled. *Jones v. Apfel*, 190 F.3d

1228 (11th Cir. 1999). First, the claimant must show that she has not

;ed in "substantial gainful activity." Second, she must prove that she has a

: impairment or combination of impairments. In step three, if her impairment

or equals a listed impairment, she is automatically found disabled. If it does

2

she must move on to step four, where she must prove that she is unable to form her past relevant work. Finally, if the claimant cannot perform past vant work, then the burden shifts to the Commissioner in the fifth step to show there is other work available in significant numbers in the national economy the claimant is able to perform. *Id.*

At step four of the evaluation process, the Administrative Law Judge (ALJ) t consider: "(1) the claimant's residual functional capacity (RFC); and (2) the nant's ability to return to her past relevant work." *Phillips v. Barnhart*, 357 1232, 1238 (11th Cir. 2004). RFC refers to that which the claimant is still to do despite the limitations caused by her impairments. *Id.* The ALJ ¬mines the level of a claimant's RFC based on all the relevant medical and : evidence in the case. *Id.* The claimant bears the burden of demonstrating ³he cannot return to her past relevant work. *Lucas v. Sullivan*, 918 F.2d 1567, (11th Cir. 1990). If the claimant can return to her past relevant work, the will determine the claimant is not disabled. *Phillips*, 357 F.3d at 1238. tionally, the testimony of a vocational expert is only required to determine a ³ant's RFC where the claimant has proved that she is unable to return to her work. *Lamb v. Bowen*, 847 F.2d 698, 704 (11th Cir.1988).

In this case, the actual inquiry is whether the ALJ erred in finding that ncil's mental impairment did not prevent her from returning to her past ⁄ant work. Council argues the ALJ should have found her mental impairment re at step two. Council then argues that, because the ALJ did not find the tal impairment severe at step two, he ignored her mental impairment at step when determining whether she could return to her past relevant work. The nd part of this argument reveals that her argument on appeal, despite how she ⁄rticulated it, is actually that the ALJ should have found that her mental irment prevented her from returning to her past relevant work under step four. ep two of the sequential evaluation, the ALJ reviewed the medical evidence ⁄ding both her physical and mental impairments and concluded that Council an impairment or combination of impairments considered "severe.'" ⁄fore, the ALJ could not have committed any error at step two because he ⁄ that Council had a severe impairment or combination of impairments and ⁄d on to the next step in the evaluation, which is all that is required at step *Jones*, 190 F.3d at 1228.

Next, the ALJ's finding that Council's mental impairment did not prevent ⁄om returning to her past relevant work is supported by substantial evidence. ⁄LJ gave great weight to the opinion of Dr. Rodney Poetter in analyzing

4

ncil's RFC as to her mental impairment.[1]  After reviewing Dr. Poetter's

ngs, the ALJ determined Council does not have a severe mental impairment

prevents her from responding appropriately to ordinary work pressure.  The

noted that Dr. Poetter indicated Council would have difficulty responding to

: pressures appropriately, based on the fact stress exacerbates pain, especially

difficult tasks.  However, this conclusion was undermined by the fact Dr.

:er also found Council had tendencies toward symptom exaggeration.

Additionally, the ALJ's finding that Council has only a mild restriction of

ities of daily living and mild difficulties in maintaining social functioning

use of her mental impairment is supported by Dr. Poetter's comments.

ncil reported to Dr. Poetter that she gets along well with others, attends church

a week, has friends with whom she talks on the phone, and that her interests

de reading, bargain hunting, walks, and church.  Further, Dr. Poetter

luded she performs all activities of daily living independently.

In her testimony, Council stated lack of concentration as a reason why she

ot return to her past work.  However, Dr. Poetter's report reveals that Council

rienced only mild deficiencies in memory and concentration.  Dr. Poetter

---

[1]Council does not specifically challenge the fact that the ALJ gave great weight to Dr.
:r's opinion in his analysis of her mental impairment.

d no indication of any significant memory dysfunction. Dr. Poetter also noted

was able to perform mental exercises quickly and without error, which he

d was inconsistent with severe concentration deficits. Therefore, the evidence

orts the ALJ's conclusion that any deficits in memory or concentration are

. Finally, it is important to note that Council did not stop working due to her

ility to cope with work pressures; she stopped working due to back pain and

then terminated as part of a reduction in force.

The comments of Dr. Poetter provide substantial evidence to support the

's determination that Council does not have a mental impairment that would

lude her from returning to her past relevant work. The ALJ's analysis at step

of Dr. Poetter's opinion also shows that the ALJ did not ignore Council's

al impairment, as she argues, when he determined her RFC and whether she

able to return to her past relevant work. Further, the ALJ's decision was

d on proper legal standards. He stated at step four that a determination must

ade whether Council retained the residual functional capacity to perform the

irements of her past relevant work, and defined RFC as "the most an

idual can still do after considering the effects of physical and/or mental

ations that affects the ability to perform work-related tasks." Finally, the ALJ

not required to consider the testimony of a vocational expert, as Council

ıs to suggest by requesting that the case be remanded back to the ALJ in order

velop the record with the assistance of a vocational expert, because Council

ot prove that she is unable to return to her past work. *Lamb*, 847 F.2d at 704.

## II. CONCLUSION

The ALJ's decision was supported by substantial evidence and based on the

ər legal standards. We affirm the Commissioner's decision to deny Council

ility benefits.

AFFIRMED.